IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| **BROOKE WILKERSON,** § § | |
| Plaintiff, § § | |
| v. § | Civil Action No. 4:21-cv-273-ALM-KPJ |
| § | |
| **KILOLO KIJAKAZI,**[1] § *Acting Commissioner of Social Security*, § § | |
| **Defendant.** § | |

**REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

Plaintiff Brooke Wilkerson ("Ms. Wilkerson") brings this appeal under 42 U.S.C. § 405(g) for judicial review of a final decision of the Commissioner of Social Security (the "Commissioner") denying her claim for supplemental security income. Having considered the briefs submitted by the parties and the administrative record, the Court recommends that the Commissioner's final decision be **REVERSED** and **REMANDED** for further proceedings.

**I. APPLICABLE LAW**

A. **Sequential Evaluation Process**

To qualify for disability benefits, a claimant must establish that he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 416.905(a).

---

[1] Kilolo Kijakazi became the Acting Commissioner of the Social Security Administration on July 9, 2021, and is automatically substituted as the defendant in this action. FED. R. CIV. P. 25(d).

When considering a disability application, the Commissioner is required to use a five-step sequential evaluation process. 20 C.F.R. § 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). At the first four steps of the evaluation process, the claimant must show: (1) the claimant is not engaged in "substantial gainful activity"; (2) the claimant has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; and (3) the impairment(s) either meet or equal one of the Listings[2] of presumptively disabling impairments; or (4) the claimant is unable to perform his or her "past relevant work." 20 C.F.R. § 416.920(a)(4)(i)–(iv); *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990). If the claimant cannot show that his or her impairment meets or equals a Listing but proves that he or she is unable to perform his or her "past relevant work," the burden of proof shifts to the Commissioner, at step five, to show that the claimant is able to perform other work in the national economy, considering the claimant's residual functional capacity ("RFC"), age, education, and work experience. *Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994); *Graves v. Colvin*, 837 F.3d 589, 592 (5th Cir. 2016) ("The burden of proof is on the claimant for the first four steps but shifts to the agency at step five; a finding at any step that a claimant is or is not disabled ends the analysis.").

B.   **Standard of Review**

The standard of review in a social security appeal is whether the Commissioner's final decision[3] "is supported by substantial evidence in the record and whether the proper legal standards were used in evaluating the evidence." *Bowling*, 36 F.3d at 434 (quoting *Villa*, 895 F.2d at 1021). If substantial evidence supports the Commissioner's findings and the correct legal

---

[2] 20 C.F.R. pt. 404, subpt. P, app. 1.

[3] The Court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g), which generally is the ALJ's decision, 20 C.F.R. § 416.1481, as it is in this case.

standards were applied, the Commissioner's decision stands, and the plaintiff is not entitled to relief. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pena v. Saul*, 846 F. App'x 308, 309 (5th Cir. 2021) (internal quotation marks omitted) (quoting *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994)). "[I]t must be more than a scintilla, but it need not be a preponderance." *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995) (quoting *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1992)). Substantial evidence "must do more than create a suspicion of the existence of the fact to be established, but 'no substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Bailey v. Saul*, 853 F. App'x 934, 935 (5th Cir. 2021) (quoting *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988)). The Court "may not reweigh the evidence in the record, nor try the issues *de novo*, nor substitute [the Court's] judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's] decision." *Bowling*, 36 F.3d at 434 (quoting *Harrell*, 862 F.2d at 475). Rather, evidentiary conflicts are for the Commissioner to decide, and "if a decision is supported by substantial evidence, it must be affirmed even if there is contrary evidence." *Bailey*, 853 F. App'x at 935 (citing *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990)). However, the Court must do more than "rubber stamp" the decision; the Court must "scrutinize the record and take into account whatever fairly detracts from the substantiality of evidence supporting the [Commissioner's] findings." *Cook v. Heckler*, 750 F.2d 391, 393 (5th Cir. 1985).

## II. BACKGROUND AND PROCEDURAL HISTORY

Ms. Wilkerson was born in 1981, completed high school, and last worked in 2011.[4] *See* Tr. 18, 42. On November 9, 2018, Ms. Wilkerson filed an application for Supplemental Security Income ("SSI").[5] *See* Tr. 169–90. In her application, Ms. Wilkerson alleged disability since January 1, 2009, due to bipolar disorder, anxiety disorder, cannabis use disorder, and amphetamine-type substance use disorder. *See* Tr. 76–77. Ms. Wilkerson later amended her alleged onset date to September 1, 2011. *See* Tr. 194. The Social Security Administration ("SSA") denied Ms. Wilkerson's claim initially on February 8, 2019, and upon reconsideration on April 30, 2019. *See* Tr. 102–10. Thereafter, Ms. Wilkerson filed a written request for a hearing. *See* Tr. 118. On September 8, 2020, Administrative Law Judge Daniel Curran (the "ALJ") held a hearing. *See* Tr. 37–71. The hearing was attended by Ms. Wilkerson, her attorney, and a vocational expert ("VE"). *See* Tr. 37.

On November 2, 2020, the ALJ issued an unfavorable decision denying Ms. Wilkerson's claim. *See* Tr. 12–24. At step one, the ALJ found that Ms. Wilkerson had not engaged in substantial gainful activity since November 9, 2018, her application date. *See* Tr. 17. At step two, the ALJ found that Ms. Wilkerson had the following severe impairments: depression, anxiety, and substance abuse disorder. *Id*. The ALJ found that Ms. Wilkerson's posttraumatic stress disorder ("PTSD") and attention deficit hyperactivity disorder ("ADHD") were non-severe impairments. *Id*. at 17–18. At step three, the ALJ found that none of Ms. Wilkerson's impairments, alone or in combination, met or medically equaled a Listing. *See* Tr. 18–19. Because the ALJ found that none

---

[4] Documents 15-1 through 15-25 comprise the Administrative Record ("Tr."). When citing to the record, the Court cites to the Tr.'s internal pagination in the lower right-hand corner of each page, rather than to the CM/ECF document number and page.

[5] The administrative record also includes an application for disability insurance benefits ("DIB"). *See* Tr. 191–92. Ms. Wilkerson has appealed the denial of her SSI claim only.

of the impairments met a Listing, the ALJ assessed Ms. Wilkerson's RFC. *See* Tr. 19–23. The ALJ found Ms. Wilkerson had the RFC to:

> to perform a full range of work at all exertional levels but with the following nonexertional limitations: She is able to hear and understand simple oral instructions; she can never work at unprotected heights and never around mechanical parts; she can occasionally work in extreme cold and extreme heat and quiet noise; she is able [to] perform simple routine tasks and make simple work-related decisions; she is able to occasionally interact with supervisors and the general public and frequently interact with co-workers.

*See* Tr. 19. At step four, the ALJ found that Ms. Wilkerson had no past relevant work. *See* Tr. 23. At step five, the ALJ determined that considering Ms. Wilkerson's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy she could perform. *See* Tr. 23–24. Relying on the VE's testimony, the ALJ determined that Ms. Wilkerson could perform occupations such as laundry worker I, dishwasher, and housekeeper cleaner. *See* Tr. 24. Accordingly, the ALJ concluded Ms. Wilkerson was not disabled within the meaning of the Social Security Act (the "Act"). *Id*.

Ms. Wilkerson requested that the Appeals Council review the ALJ's unfavorable decision. *See* Tr. 165–68. On February 5, 2021, the Appeals Council denied the request for review. *See* Tr. 1–3. Therefore, the ALJ's decision became the Commissioner's final decision. *See Sims v. Apfel*, 530 U.S. 103, 106–07 (2000); 42 U.S.C. § 405(g). Ms. Wilkerson filed her appeal to this Court on April 5, 2021.[6] *See* Dkt. 1.

### III. ANALYSIS

Ms. Wilkerson raises two main arguments on appeal. First, she argues the ALJ did not fully account for her severe mental impairments in the RFC assessment. *See* Dkt. 21 at 5–11. Second,

---

[6] A claimant has sixty days to file an appeal. The sixty days begins running five days after the decision is mailed. 20 C.F.R. § 404.981; *see also* Tr. 2.

Ms. Wilkerson argues the ALJ failed to perform a proper drug addiction or alcoholism ("DAA") analysis.[7] *Id.* at 11–15. For the reasons that follow, the Court finds that remand is warranted based on Ms. Wilkerson's first argument.

### A. Mental RFC Assessment

The RFC is an assessment, based on all the relevant evidence, of a claimant's ability to do work on a sustained basis in an ordinary work setting despite the claimant's impairments. *See Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001). The RFC assessment is based on "all of the relevant medical and other evidence," 20 C.F.R. § 416.945(a)(3), including, but not limited to: medical history, medical signs, and laboratory findings; the effects of treatment; and reports of daily activities, lay evidence, recorded observations, medical source statements, and work evaluations. SSR 96-8p, 1996 WL 374184, at *5. When determining a claimant's RFC, the ALJ is required to "consider the limiting effects of all [the claimant's] impairment(s), even those that are not severe." 20 C.F.R. § 416.945(e). This is because symptoms from other impairments "may cause a limitation of function beyond that which can be determined on the basis of the anatomical, physiological or psychological abnormalities considered alone[.]" *Id.* The ALJ "is responsible for assessing the medical evidence and determining the claimant's residual functional capacity." *Perez v. Heckler*, 777 F.2d 298, 302 (5th Cir. 1985).

In this case, Ms. Wilkerson applied for DIB on the basis of mental impairments. After finding that Ms. Wilkerson had severe mental impairments of depression, anxiety, and substance abuse disorder, as well as non-severe ADHD and PTSD, *see* Tr. 17, the ALJ assessed a mental RFC limiting Ms. Wilkerson to: hearing and understanding simple oral instructions, performing simple routine tasks and making simple work-related decisions, occasionally interacting with

---

[7] Ms. Wilkerson also raised a third argument, which she later withdrew in her reply brief. *See* Dkt. 21 at 13; Dkt. 23.

supervisors and the general public, frequently interacting with coworkers, never working at unprotected heights or around mechanical parts, and occasionally working in extreme weather or quiet noise. *See* Tr. 19. In his written decision, the ALJ's RFC discussion began with an exhaustive review of Ms. Wilkerson's hearing testimony. *See* Tr. 20–21. The ALJ specifically detailed Ms. Wilkerson's testimony that: (1) she suffered from daily panic attacks, anxiety, PTSD, and bipolar disorder with rapid cycling mania; (2) she encountered difficulties in social settings and interacting with others; (3) she was able to attend to daily living tasks, including taking care of her children and attending school for aromatherapy; (4) she was previously incarcerated several times due to substance abuse; and (5) she used methamphetamine intermittently until April 2019, but had not used since that time. *See id*. In particular, the ALJ focused on Ms. Wilkerson's testimony regarding what it was about her mental impairments that prevented her from working, noting that Ms. Wilkerson responded: "I can hardly stand to go out in the middle of an unknown" and "Seems like a very bad decision to me to risk, you know, putting myself out there like that." *See* Tr. 21. The ALJ also acknowledged Ms. Wilkerson's testimony that she stopped working because "she had 'chosen' to focus on taking care of her children instead." *Id.* Finally, the ALJ touched on Ms. Wilkerson's testimony regarding child protective services removing her children from her custody, and her subsequent efforts to regain custody.[8] *See* Tr. 21.

      The ALJ then turned to consider the medical evidence of record, noting that Ms. Wilkerson had a lengthy history of mental health problems which were exacerbated by "severe substance abuse." *See* Tr. 21. The ALJ looked at treatment records from July 2018—when Ms. Wilkerson's children were removed from her custody—until April 2019, when Ms. Wilkerson completed an inpatient substance abuse treatment program. *See* Tr. 22. The ALJ stated:

---

[8] By the time of the September 2020 hearing before the ALJ, Ms. Wilkerson had regained custody of her children. *See* Tr. 21.

> The evidence indicates that in July of 2018, child protective services was alerted [Ms. Wilkerson] and her children were living in a tent with little or no means. Later the children were taken because the home where they were living was not sanitary. Follow up records showed [Ms. Wilkerson] was evaluated for mental health problems and severe substance abuse.
>
> . . . .
>
> However, the evidence showed that when [Ms. Wilkerson] was motivated by the loss of her children, she was able to complete[ly] maintain mental health, complete substance abuse treatment, establish an acceptable living environment with the assistance of her father and regain custody of her children.
>
> . . . .
>
> I find that [Ms. Wilkerson] has depression and anxiety but that she has demonstrated by her actions that when motivated and sober she is capable of unskilled work.

*Id.* The ALJ concluded that the "objective medical records reveal that if [Ms. Wilkerson] was able to remain clean and sober, she would be capable of following simple instructions and complete simple tasks with some reasonable restrictions on interaction." *Id.* In addition to the above medical records, the ALJ considered the opinion evidence, which consisted of two state psychological consultations. *Id.* He rejected the opinion of the first psychological consultant, finding it "highly unpersuasive because it was based upon incomplete evidence," inconsistent with Ms. Wilkerson's hearing testimony, and "firmly rejected" by the second state agency psychological consultant. *Id.* As to the second agency psychological consultant's opinion, dated April 29, 2019, the ALJ found the opinion "somewhat persua[sive]" since it was "generally consistent" with Ms. Wilkerson's hearing testimony. *See* Tr. 23. At this point in his decision, the ALJ assessed Ms. Wilkerson's mental RFC. In so doing, the ALJ relied heavily on Ms. Wilkerson's hearing testimony:

> Because the evidence showed [Ms. Wilkerson] was able to take online classes and earn a Master's degree in aroma therapy, I find she is able to hear and understand simple oral instruction and perform simple routine tasks and make simple work-related decisions. *She confirmed this ability in her hearing testimony.*
>
> *In light of [Ms. Wilkerson's] allegations that she has daily panic attacks* which last no more than a few second[s] to 10 minutes and are triggered by anything loud or chaotic, I would limit [Ms. Wilkerson] to environments with no exposure to unprotected heights or mechanical parts or that are not consistently quiet.

8

> Additionally, she should not more than occasionally be expected to work in extreme cold and extreme heat. However, *given her testimony that she was fond of nature*, some work in warm and cool conditions should not be a problem.

*See* Tr. 22 (emphasis added).

On appeal, Ms. Wilkerson contends the ALJ's RFC assessment fails to fully account for her mental impairments. Ms. Wilkerson's argument focuses heavily on the removal of her children from her custody in August 2018, and her subsequent efforts that year and into 2019 to reunify with her children. *See* Dkt. 21 at 5–9. Ms. Wilkerson points to treatment records from this time period showing numerous mental health evaluations as well as inpatient and outpatient substance abuse treatment. *Id.* As detailed above, the ALJ's decision reflects that he adequately considered and accounted for these medical records in his RFC discussion—indeed, the ALJ discussed the removal of Ms. Wilkerson's children, her subsequent evaluations for mental health and substance abuse issues, and her completion of inpatient treatment. *See* Tr. 21–22. If this were the extent of Ms. Wilkerson's argument, remand would not be warranted. Ms. Wilkerson's argument goes beyond this, however, with her briefing pointing to multiple mental health records dated later in the time period at issue that she contends the ALJ did not consider in his decision. *See* Dkt. 21 at 8–9. The Court agrees with Ms. Wilkerson's assessment that the ALJ's decision is devoid of any mention of these medical records. In fact, the ALJ's RFC discussion of medical evidence seemingly ends with Ms. Wilkerson's completion of inpatient substance abuse treatment in April 2019. At this point, the ALJ deemed Ms. Wilkerson able to "maintain mental health," "establish an acceptable living environment," and "remain clean and sober." *See* Tr. 22. The ALJ's decision does not reflect that he considered any objective medical evidence beyond April 2019, which included at least one year's worth of mental health treatment that Ms. Wilkerson received at

9

Denton County MHMR Center ("Denton MHMR"). These records paint a different picture of Ms. Wilkerson's mental impairments and any corresponding limiting effects.

The Denton MHMR records, dated from late 2019 through mid-2020, show consistent abnormal mental status examination findings of paranoia, anxiety, grandiose thoughts, hyperverbal speech, and poor insight and judgment. *See, e.g.*, Tr. 645–50 (July 2020 visit presenting with paranoia and anxiety, grandiose thoughts, poor insight and judgment, and GAF score of 50); Tr. 658–63 (May 2020 visit presenting with baseline paranoia, mild irritability, baseline hyperverbal speech with flight of ideas, fair concentration, and poor insight); Tr. 672, 675–76 (April 2020 visit presenting with mild irritability, dysphoria, paranoia, poor concentration struggling to focus, anxious, dysphoric, and poor insight and judgment); Tr. 686 (February 2020 visit presenting with suicidal thoughts, irritability, labile affect, "sad, racing thoughts, hyperverbal, anxious, and paranoi[a]"); Tr. 705 (December 2019 visit presenting with hyperverbal speech, anxious mood, dysphoric, paranoia, and poor insight and judgment); Tr. 715 (October 2019 visit presenting as "irritable, hyperverbal, poor speech, anxious, poor concentration, paranoi[a] . . ., [and] grandiose"); Tr. 733, 735 (July 2019 visit presenting with increased anxiety, dysphoria, euthymic affect, and poor insight and judgment). The records show that Ms. Wilkerson presented at Denton MHMR with suicidal ideations, hypomania, or moderate depression during some visits. *See* Tr. 686, 707, 714. The records also reveal that Ms. Wilkerson failed drug testing in February 2020, *see* Tr. 685, and admitted to occasional alcohol consumption, *see* Tr. 658. Finally, the records reflect that Ms. Wilkerson was resistant to any recommended changes in her treatment plan, *see* Tr. 664, and was non-compliant in taking her prescription medications. *See* Tr. 691 (noting that she was "[n]ot taking meds consistently" and remained "irritable, anxious, and paranoid"); Tr. 701 (December

2019 visit where reported not taking her medications for two to three weeks); Tr. 721 (October 2019 visit reported not taking medications for at least one week).

In response to Ms. Wilkerson's argument concerning the above records, the Commissioner points out that Ms. Wilkerson denied medication side effects and illicit drug use during some of the Denton MHMR visits, that she had "good attention span and concentration" during some visits, and that her "self-reports from 2019 and 2020 are consistent" with the ALJ's RFC assessment. *See* Dkt. 18 at 21. The Commissioner's argument oversimplifies the records at issue. The Commissioner fails to acknowledge that the ALJ's decision does not mention these records at all, with the ALJ choosing to end his discussion of the medical evidence with Ms. Wilkerson's discharge from inpatient substance abuse treatment in April 2019. If anything, that Ms. Wilkerson and the Commissioner choose to highlight different aspects of the Denton MHMR records from 2019 and 2020 only confirms the probative nature of this medical evidence. In the absence of any indication that the ALJ considered such probative evidence, the Court finds the ALJ erred in formulating Ms. Wilkerson's RFC. Although the ALJ is entitled to significant deference in deciding the appropriate weight to accord the various pieces of evidence in the record, *see Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir. 1985), the "ALJ must consider all the record evidence and cannot 'pick and choose' only the evidence that supports his position." *Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir. 2000). Because the Court cannot weigh the evidence in the first instance and resolve any conflicts between the Denton MHMR records and the earlier records the ALJ relied upon, remand is necessary. *See Pennington v. Comm'r of Soc. Sec. Admin.*, No. 3:16-cv-230, 2017 WL 4351756, at *1 (S.D. Tex. Sept. 29, 2017) ("The reviewing court may not reweigh the evidence, try the questions *de novo*, or substitute its judgment for the Commissioner's, even if it believes the evidence weighs against the Commissioner's decision. Conflicts in the evidence are

11

for the Commissioner, not the courts, to resolve." (citing *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002))); *see also* SSR 96-8p, 1996 WL 374184, at *7 (stating the ALJ "must . . . explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved."). Because remand is warranted, the Court does not reach Ms. Wilkerson's claimed error regarding the DAA analysis, as that may be affected by the ALJ's treatment of this case on remand.

## IV. RECOMMENDATION

For the foregoing reasons, the Court recommends that the Commissioner's decision be **REVERSED** and **REMANDED** for further proceedings.

Within fourteen (14) days after service of the magistrate judge's report, any party may serve and file written objections to the findings and recommendations of the magistrate judge. 28 U.S.C. § 636(b)(1)(C).

A party is entitled to a *de novo* review by the district court of the findings and conclusions contained in this report only if specific objections are made, and failure to timely file written objections to any proposed findings, conclusions, and recommendations contained in this report shall bar an aggrieved party from appellate review of those factual findings and legal conclusions accepted by the district court, except on grounds of plain error, provided that the party has been served with notice that such consequences will result from a failure to object. *Id.*; *Thomas v. Arn*, 474 U.S. 140 (1985); *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten (10) to fourteen (14) days).

**So ORDERED and SIGNED this 2nd day of September, 2022.**

_____
KIMBERLY C. PRIEST JOHNSON
UNITED STATES MAGISTRATE JUDGE